**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0201-17T4
                 A-0518-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANDREA K. DUNBRACK,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GABRIEL RODRIGUEZ,

      Defendant-Appellant.

_____

        Argued April 10, 2019 — Decided May 1, 2019

        Before Judges Alvarez and Mawla.

        On appeal from Superior Court of New Jersey, Law
        Division, Mercer County, Indictment No. 15-01-0058.

Robin Kay Lord argued the cause for appellant Andrea K. Dunbrack.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant Gabriel Rodriguez (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the brief).

Narline Casimir, Assistant Prosecutor, argued the cause for respondent in A-0201-17 (Angelo J. Onofri, Mercer County Prosecutor, attorney; Randolph E. Mershon, III, Assistant Prosecutor, of counsel and on the brief).

Narline Casimir, Assistant Prosecutor, argued the cause for respondent in A-0518-17 (Angelo J. Onofri, Mercer County Prosecutor, attorney; Narline Casimir, of counsel and on the brief).

PER CURIAM

In these back-to-back appeals, defendant Andrea Dunbrack challenges her December 15, 2016 judgment of conviction on one count of first-degree robbery, N.J.S.A. 2C:15-1(a)(1); two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).  She also appeals from her sentence.

Defendant Gabriel Rodriguez appeals from his December 15, 2016 judgment of conviction on one count of first-degree robbery, N.J.S.A. 2C:15-1(a)(1); one count of second-degree unlawful possession of a weapon, N.J.S.A.

2C:39-5(b); one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and one count of fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2). He also challenges his sentence. We reverse and remand for a new trial for both defendants.

We take the following facts from the record. During the evening of June 15, 2014, the victim consumed several beers at multiple bars in Trenton. Around midnight, Rodriguez approached the victim and offered him a cheap taxi ride.

At approximately 1:20 a.m., Rodriguez arrived in the front-passenger's seat of a gray-colored vehicle driven by Dunbrack. The victim sat in the backseat of the vehicle and told Dunbrack to take him to his home in Lawrenceville. After driving for a few minutes, the victim noticed the vehicle was in Hamilton Township. When the victim asked Rodriguez and Dunbrack where they were taking him, Dunbrack suddenly pulled the car over. Rodriguez then opened the passenger door, pointed a gun at the victim, and stated "[g]ive me your money, otherwise I'll kill you." The victim gave Rodriguez his wallet and cellphone. Rodriguez then punched the victim in the face and instructed him to strip naked. When the victim failed to listen, Rodriguez punched and pistol-whipped him.

At approximately 1:45 a.m., Hamilton Township Police Officers Robert Whartenby and David Walls were returning from a dispatch and noticed a vehicle with its headlights on in the parking lot next to an abandoned building. As officers approached, they noticed the driver's side door was open and the vehicle was empty. When they got closer, the officers saw Rodriguez standing with his back towards the vehicle and Dunbrack standing by the passenger's side taillights. Walls exited the patrol vehicle, walked towards Dunbrack, and noticed a small fire and a man, later identified as the victim, lying on the ground naked in a fetal position. Whartenby noted the victim had a visibly high heart rate, and his face and head were covered in blood.

Rodriguez fled on foot, but was apprehended a few hours later. He had money and four cellular telephones in his possession, including the victim's telephone.

Meanwhile, Walls extinguished the fire and tended to the victim. Officers confirmed the vehicle was registered to Dunbrack. Whartenby observed a woman's purse and a revolver on the driver's seat of the vehicle. He placed Dunbrack into custody and sat her in the backseat of the patrol vehicle. He observed Dunbrack moving around and saw she had moved her handcuffed

hands from behind her back to the front of her body. Dunbrack was searched at the scene, but nothing was recovered.

Officers recovered the victim's blue t-shirt, underwear, and socks located near the vehicle where the victim was laying. Inside Dunbrack's vehicle, they recovered the victim's pants, passport, wallet, and money. The victim was transported to the hospital where he received multiple staples on his head and sutures above his left eye.

Dunbrack was searched again at police headquarters and a semi-automatic handgun was discovered hidden in her bra. Dunbrack's feet and Rodriguez's hands were also bloody. Police took samples of the blood on Dunbrack and Rodriguez, the revolver recovered from Dunbrack's vehicle, and the gun from her person. The blood located on the revolver and on Dunbrack's feet matched the victim's DNA. The test results for the blood on Rodriguez's hands were inconclusive.

Dunbrack and Rodriguez's cases were tried together before a jury. Both stipulated neither had ever applied for or were issued a permit to carry a handgun.

Dunbrack testified she had no direct involvement in the crime. She claimed Rodriguez was driving her from her job as an exotic dancer in Atlantic

A-0201-17T4

City to their hotel in northern New Jersey because her license was suspended. She asserted an argument occurred because Rodriguez wanted to go to a bar and she wanted to go home. Regardless, Rodriguez stopped at a bar in Trenton. She claimed Rodriguez entered the bar, but she stayed in the vehicle and drove away for a few minutes before returning to the bar. She then saw Rodriguez walk out of the bar with the victim.

Dunbrack testified Rodriguez drove the vehicle while she and the victim sat in the backseat. She claimed the victim began speaking to her in Spanish and put his hand on her leg, which she removed and said "no." She claimed the victim simultaneously began to remove his pants, expose himself, and climb on top of her. Rodriguez then reached into the back seat and hit the victim in the head with something, which caused the victim to start bleeding in the car. Dunbrack claimed she maced and kicked the victim. Rodriguez then pulled over, dragged the victim out of the car, threw Dunbrack's purse into the front seat, and began fighting the victim. Dunbrack testified Rodriguez instructed her to hold the gun, which she hid in her bra.

Police recovered no evidence of blood from inside the vehicle and Whartenby testified he did not smell mace in the car or on the victim. Moreover, Dunbrack was unable to provide an explanation why the victim was naked, or

A-0201-17T4

why his pants, wallet, and passport were in the front seat of the car. Dunbrack also conceded she did not mention the alleged sexual assault when police arrived.

During the charge conference, Dunbrack's counsel sought a charge for a justification defense based on "use of force in defense of one's self and defense of others." Importantly, her counsel also mentioned a lesser-included offense charge stating:

> And I'm just wondering . . . if justification would be a charge that we should have the jury consider. And if we go there, could there also be the various levels of assault rather than an actual robbery. If in fact the jury didn't believe there was a robbery, . . . it could be an assault, second or third degree, even a simple assault if they thought that. And . . . possibly a theft from a person or a theft in general if in fact there was some type of justification for the altercation and the assault.
>
> But then . . . Rodriguez is leaving the scene with the phone in his pocket. Was it an actual robbery[?] [I]s it a theft[?] So I just wanted to throw that out there based on . . . Dunbrack's testimony.

Dunbrack's counsel also mentioned Rodriguez could be "justified in pulling [the victim] out of the car" because of the alleged sexual assault.

The discussion then turned to the State's objection as to whether it had received adequate notice that the defense would be seeking the charges, which the State ultimately conceded. The trial judge then addressed and determined

A-0201-17T4

whether the justification instruction was appropriate to charge. The judge and counsel agreed to modify the instruction regarding deadly-force and the duty to retreat because it was not applicable. No further discussion regarding lesser-included offenses occurred and the judge did not charge the jury accordingly. Rodriguez and Dunbrack were convicted of all charges, with the exception of one of the possession of a weapon for an unlawful purpose charges against Dunbrack, which the judge dismissed.

Approximately three months later, Dunbrack filed a motion for a judgment of acquittal and a motion for a new trial. She attached a handwritten letter written by Rodriguez purporting to exonerate her. The court denied both motions and sentenced both defendants. These appeals followed.

Dunbrack raises the following points on appeal:

> POINT ONE – THE TRIAL COURT ERRED IN RULING THAT DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE WAS TIME BARRED BECAUSE A MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE MAY BE MADE AT ANY TIME.

> POINT TWO – THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE MUST BE REVERSED BECAUSE THE CO-DEFENDANT'S LETTER EXONERATING DEFENDANT IS MATERIAL, NEWLY

DISCOVERED, AND WOULD PROBABLY CHANGE THE JURY'S VERDICT.

POINT THREE – A QUALITATIVE WEIGHING OF THE AGGRAVATING AND MITIGATING FACTORS DOES NOT SUPPORT THE IMPOSITION OF AN AGGREGATE SENTENCE OF [THIRTEEN] YEARS WITH AN [EIGHTY-FIVE PERCENT] PERIOD OF PAROLE INELIGIBILITY.

In her reply-brief Dunbrack argues,

POINT ONE – THE TRIAL COURT'S DECISION DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISOVERED [SIC] EVIDENCE MUST BE REVERSED.

Rodriguez raises the following points on his appeal:

POINT I – A NEW TRIAL SHOULD BE OCCUR [SIC] BECAUSE THE COURT MISTAKENLY NEGLECTED TO CHARGE THEFT AS A LESSER-INCLUDED ALTERNATIVE TO ROBBERY WHEN THE TESTIMONY SHOWED THAT THE THEFT MIGHT HAVE BEEN AN AFTERTHOUGHT AFTER A FIGHT WAS OVER. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1.

POINT II – A RESENTENCING SHOULD OCCUR BECAUSE THE COURT DID NOT EXPLAIN WHY IT FOUND AGGRAVATING FACTORS THREE, SIX, AND NINE, AND THE APPARENT REASON WAS A SERIES OF PRIOR ARRESTS FOR WHICH NO DISPOSITION WAS KNOWN. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1.

A-0201-17T4

We address only the claim that the trial judge failed to sua sponte charge the jury on the lesser-included offense of theft and only charged robbery. Because we find this was reversible error requiring a new trial, we do not reach the other arguments raised by the parties.

When a defendant does not object to a jury instruction at trial, we review the charge for plain error. R. 1:7-2; R. 2:10-2; State v. McKinney, 223 N.J. 475, 494 (2015). Plain error is a "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Adams, 194 N.J. 186, 207 (2008) (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

As a general proposition, "[n]o defendant should be convicted of a greater crime or acquitted merely because the jury was precluded from considering a lesser offense." State v. O'Carroll, 385 N.J. Super. 211, 223-24 (App. Div. 2006) (quoting State v. Muhammad, 182 N.J. 551, 577 (2005)). "A trial judge . . . 'has an independent obligation' to instruct the jury on lesser-included charges when the evidence 'clearly indicate[s] that a jury could convict on the lesser while acquitting on the greater offense.'" Id. at 224 (alteration in original) (quoting

State v. Jenkins, 178 N.J. 347, 361 (2004)). "If neither party requests a charge on a lesser-included offense, the court must sua sponte provide an instruction 'when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense.'" State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)).

"The Code . . . incorporates theft as an element of robbery." State v. Mejia, 141 N.J. 475, 495 (1995). "All robberies are thefts; robbery is simply a greater offense that always includes theft." State v. Sein, 124 N.J. 209, 229 (1991) (citing N.J.S.A. 2C:15-1). "Although robbery may consist of an assault on one victim following a theft from another . . . , theft or attempted theft is always a necessary element of any robbery[.]" Mejia, 141 N.J. at 495 (citations omitted).

As we noted, Dunbrack's counsel did raise the issue of a lesser-included charge. However, the discussion during the charge conference appears to have focused on other aspects of the jury instructions.

The trial judge's jury instruction on robbery was as follows:

> In order for you to find . . . defendant or defendants guilty of robbery, the State is required to prove each of the following elements beyond a reasonable doubt:

1. That . . . defendant or defendants were in the course of committing a theft;

2. While in the course of committing that theft, . . . defendant or defendants knowingly inflicted bodily injury or used force upon another.

As I have said, the State must prove beyond a reasonable doubt that . . . defendant or defendants were in the course of committing a theft. In this connection, you are advised that an act is considered to be "in the course of committing a theft" if it occurs in an attempt to commit the theft, during the commission of the theft itself, or in the immediate flight after the attempt or the commission.

Theft is defined as the unlawful taking or exercise of unlawful control over property of another with the purpose to deprive him thereof.

Although the charge defined theft, the parties do not dispute that the remainder of the judge's instructions, which we need not repeat here, informed the jury it could only determine whether defendants were guilty of robbery.

The request by counsel for the lesser-included charge during the charge conference could have been clearer, as opposed to merely "throw[ing the charge] out there" for the judge's consideration. Notwithstanding, the trial judge had the duty, independent of counsel's request, to sua sponte charge the jury accordingly where the facts clearly indicated it could acquit defendants of the robbery, but find theft. The facts demonstrated a jury could find defendants had acted

12

individually or in concert to deprive the victim of his property. For these reasons, the failure to give the lesser-included offense charge was plain error clearly prejudicial to defendants because it presented the jury with an all-or-nothing decision to convict or acquit only on the robbery.

Reversed and remanded for a new trial as to both defendants. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0201-17T4